**Gerald WALL, Dr., Plaintiff–Appellant,**

v.

**COUNTY OF ORANGE, a political subdivision of the State of California; H. Watson, Defendants–Appellees.**

No. 02–56032.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 1, 2004.

Filed April 16, 2004.

---

Robert M. Ross, Klass, Helman & Ross, Encino, CA, for the plaintiff-appellant.

William F. Bernard, Orange, CA, for the defendants-appellees.

Before: SKOPIL, NOONAN, and BERZON, Circuit Judges.

NOONAN, Circuit Judge:

Gerald Wall appeals the district court's grant of summary judgment in his civil rights case against defendants County of Orange (the county) and Harry Joseph Watson, a deputy sheriff employed by the county. Holding that there were disputed issues of material fact that the district court mistakenly resolved, we reverse its judgment and remand for trial.

## FACTS

Following familiar law, we present the facts in the light most favorable to the nonmoving party together with the inferences rationally drawable from them, as follows:

On October 9, 1998, Gerald Wall, a dentist, took his Lexus sports utility vehicle for a car wash and oil change at a business co-owned by a father and son, George Chala, Sr. and George Chala, Jr. The former was not present. Chala, Jr. asked Wall for his home address and phone number. Wall refused, telling Chala, Jr. that such information may serve marketing interests, but he knew of no law mandating that he give the information and he had a right to privacy. Chala, Jr. told Wall he was insisting on the information because of "store policy." Wall asked for his car back, saying he wanted to leave. Chala, Jr. refused, saying work had begun on the car. Wall asked for the manager and learned Chala, Jr. was the manager.

Wall may have been agitated and raised his voice during his exchange with Chala, Jr. but did not use profanity. He went to the service area to make sure his car was not being damaged. Chala, Jr. told him to leave the service area and walked back to his office. Wall followed him. Chala, Jr. approached very close with clinched fists. Chala, Jr. said he was going to call the police. Wall said, "Good, that will help solve the problem." He then left the office and waited in a back area for the police to arrive.

Deputy Pamela J. Colver arrived first, followed by Deputy Harry Joseph Watson. Chala, Sr., who had returned from lunch, spoke to Watson. Wall remained with Deputy Colver. Wall approached Watson and Chala, Sr. as the two were walking out of Chala, Sr.'s office and said he wanted his car so he could leave. Watson twice told him, "You better get out of here." Wall twice responded he would not leave without his car. Then a service employee stated the oil change was done, and asked what to do next. Wall replied, "I came here to get my car washed, that's why I'm here. I want to get my car washed and then I'll leave." Deputy Watson asked Chala, Sr. where Wall's car would be. On learning where his car would be after servicing, Wall agreed to leave and began walking towards where his car would be delivered, with Watson behind him.

As both men walked toward the delivery point, Wall told Watson in an elevated and agitated voice that Chala, Jr. had assaulted him in the office. He told Watson to investigate the incident. Watson appeared agitated and replied that Chala Jr.'s behavior was not his problem. Wall never stopped walking as he complied with Watson's order to leave.

Suddenly and without warning Watson "physically attacked" Wall from behind, though Wall was walking in compliance with Watson's order to leave. Watson grabbed him by his right wrist and bent and twisted his arm, causing pain. Watson then forced Wall "face first down" into a car, smashing his face, chest, and glasses.

Watson handcuffed Wall's hands "extremely tight" behind his back, picked Wall up by his handcuffed arms and threw Wall "upside down" and head first into the patrol car. The patrol car felt like it was

80 or 90 degrees. Wall sat inside waiting for Watson for about 20 minutes. Wall asked Watson "to please loosen the handcuffs" when Watson returned to the vehicle. En route to the police station, Wall asked him to relieve the handcuffs again.

Wall spent the night in jail and was released the next morning. Wall was charged under California Penal Code § 148, which proscribes resisting or obstructing a peace officer, and California Penal Code § 602.1, which proscribes interfering with a business by obstructing or intimidating employees or customers and refusing to leave. All charges were ultimately dismissed.

An expert declaration by Dr. Pedro J. Postigo, a neurologist, stated that Wall sustained an injury to his right medial nerve as a result of the October 9, 1998 incident. Wall was forced by the injury to give up his profession of dentistry.

## PROCEEDINGS

On October 6, 1999, Wall filed this suit charging the defendants with violation of 42 U.S.C. § 1983 and with state torts of false arrest and false imprisonment. Declarations were filed and depositions taken from pertinent witnesses. On February 19, 2002, the defendants moved for summary judgment; Wall opposed the motion. On May 15, 2002, the district court issued a Statement Of Uncontroverted Facts And Conclusions Of Law. Doing so, the district court adopted the statement of facts prepared by the defendants, making minuscule changes and almost entirely ignoring the declaration and deposition of Wall.

The district court also adopted the conclusions of law furnished by the defendants. The defendants were held to have qualified immunity. There was no constitutional violation. Deputy Watson's actions were objectively reasonable. He violated no clearly established law.

Wall's claim against the county under *Monell v. Department of Social Services,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) fell with his claim against Watson.

Wall appeals.

## ANALYSIS

"A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Where the facts are disputed, their resolution and determinations of credibility "are manifestly the province of a jury." *Santos v. Gates,* 287 F.3d 846, 852 (9th Cir.2002).

Here, the district court, in its mistaken reliance on the drafting of defendants' counsel, found as facts the following assertions disputed by the plaintiff: That when Chala, Jr. asked him for his name and address, Wall "began swearing, raising his voice and waving his arms"; that Wall followed Chala, Jr. into the service area and refused to leave; that Wall interfered with Chala, Jr.'s ability to carry on his business; that other witnesses became concerned for their own safety; that Chala, Jr. asked Wall to leave the business premises and he refused to do so; that Chala, Jr. then called the police; that Watson observed behavior leading him to believe that Wall was interfering with Chala, Jr.'s ability to conduct business; that after being ordered by Watson to leave several times, Wall refused; that Watson arrested him for trespassing; that Wall has no recollection of asking Watson to loosen the handcuffs, and Watson was never told that they were too tight.

Comparison of these findings with the evidence proffered by the plaintiff demonstrates how several disputed issues of fact were decided by the district court, viz., the nature of Wall's conduct before the police came; the knowledge Watson had of any conduct justifying Wall's arrest; and the information given Watson as to the effect of the handcuffs. The district court also omitted any findings as to the violence of the arrest. By deciding to rely on the defendants' statement of fact, the district court became a jury.

■ The defendants assert that the details of the violent arrest cannot be considered because of a pre-trial order that was lodged but never entered. It is true that an order *entered after* a pre-trial conference "shall control the subsequent course of the action unless modified by a subsequent order." Fed.R.Civ.P. 16(e). Here, however, there was no entry. The unentered order was not controlling.

If Wall's version of the facts is believed, he was arrested without probable cause in violation of the Fourth Amendment. Watson testified that he arrested Wall because Wall stopped walking towards his car. Wall testified that he never stopped. He was walking away as directed and merely asked Watson to investigate a possible assault. Moreover, Wall never intimidated or obstructed employees or customers in Watson's presence. California law prohibits a peace officer from arresting someone suspected of committing a misdemeanor unless the officer "has probable cause to believe that the person to be arrested has committed a public offense in the officer's presence." Cal.Penal Code § 836(a)(1).

Additionally, the arrest was accomplished by violence, again in violation of the Fourth Amendment. *See Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (holding that a Fourth Amendment excessive force analysis "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight"). If Wall's account is true, the balance of the *Graham* factors in his case indicates the force used was excessive.

■ "[I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151. This requirement does not mean that the very action at issue must have been held unlawful before qualified immunity is shed. *Hope v. Pelzer,* 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier,* 533 U.S. at 202, 121 S.Ct. 2151.

■ On Wall's version of the facts, a reasonable officer would know that an arrest would be unlawful under the circumstances. Wall had agreed to walk away and was doing so. He simply turned his head over his shoulder as he walked to ask an officer to investigate a possible assault. *Cf. Palmer v. Sanderson,* 9 F.3d 1433, 1436–37 (9th Cir.1993); *Beier v. City of Lewiston,* 354 F.3d 1058, 1065–66 (9th Cir. 2004).

Additionally, a reasonable officer would have known there was no grounds to arrest Wall unless intimidation or obstruct[ion] took place in the officer's presence. *See* Cal.Penal Code §§ 602.1, 836(a)(1). State law requirements are relevant in assessing the reasonableness of an arrest. *See Bingham v. City of Manhattan Beach,* 341 F.3d 939, 946 (9th Cir.

2003); *Pierce v. Multnomah County,* 76 F.3d 1032, 1038 (9th Cir.1996).

■ On Wall's version of the facts, Watson used excessive force in making the arrest and continuing the restraint by handcuffs that hurt and damaged Wall's wrist. Again, Watson would have violated a clearly established constitutional right to be free of excessive force. *See Alexander v. County of Los Angeles,* 64 F.3d 1315, 1322–23 (9th Cir.1995). The Fourth Amendment prohibits a broad variety of governmental intrusions on the person. As we have put it: "The Fourth Amendment's requirement that a seizure be reasonable prohibits more than the unnecessary strike of a nightstick, sting of a bullet, and thud of a boot." *Fontana v. Haskin,* 262 F.3d 871, 878 (9th Cir.2001). It is well-established that overly tight handcuffing can constitute excessive force. *E.g., Meredith v. Erath,* 342 F.3d 1057, 1061, 1063–64 (9th Cir.2003); *LaLonde v. County of Riverside,* 204 F.3d 947, 960 (9th Cir.2000).

As the *Monell* claim was dismissed because of the dismissal of Wall's claim against Watson, the *Monell* claim is now reinstated. Because the district court reached no legal conclusions on Wall's state-law claims, neither do we. The state-law claims were dismissed with Wall's federal claims when the district court found the defendants entitled to qualified immunity. Because the qualified immunity ruling was erroneous, the state-law claims are revived.

REVERSED and REMANDED for proceedings in accordance with this opinion.