**Allan Mark LIIV, Plaintiff—Appellant,**

**v.**

**CITY OF COEUR D'ALENE,
Defendant,**

John M. Kelly, et al., Defendants—
Appellees.

No. 03–35821.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 10, 2005.

Decided April 20, 2005.

Lawrence A. Hildes, Esq., Bellingham, WA, Bernard D. Zaleha, Esq., Boise, ID, for Plaintiff–Appellant.

Randall R. Adams, Esq., Quane, Smith, Howard & Hull, Coeur d'Alene, ID, for Defendant–Appellee.

Before: MCKAY,[*] O'SCANNLAIN, and BEA, Circuit Judges.

### MEMORANDUM [**]

The present dispute concerns the propriety of Plaintiff's arrest during an Aryan Nations' march. Plaintiff, a self-proclaimed "videographer, video journalist, and legal witness," attended and videotaped the Aryan Nations' march in Coeur D'Alene, Idaho, on July 10, 1999, and was arrested for crossing barrier tape, in violation of city ordinance § 9.05.010.[1]

City police officers placed barrier tape along the planned marching route prior to the commencement of the march. During the march, counter-demonstrators crossed the barrier tape and blocked a portion of the parade route. To avoid this human blockade, police officers quickly diverted the parade off the main street. Once the parade was successfully diverted, certain officers were left to address the counter-demonstrators in the street. At this time, a physical confrontation arose among some officers and observers.[2] To get a better view, Plaintiff crossed the barrier tape.

When Officer Kelly spotted Plaintiff in the street, he told Plaintiff to leave. Plaintiff, continuing to film the events, began backing away, explaining, "I'm a legal witness." [3] ER at Exh. S. Officer Kelly then arrested Plaintiff. According to Plaintiff, Officer Kelly was quite physical: "He came around behind me and pulled my arms back and said, 'You are under arrest.' ... [He then forced me to the ground by] put[ting] a lot of pressure on me." SER at 36.

After Plaintiff was placed under arrest, he was again forced to the ground: "I believe [Officer Kelly] grabbed an arm and used his body weight against mine and pushed me right down violently to the ground." *Id.* at 37. Plaintiff also alleges that Officer Kelly repeatedly forced him to stand up and sit down, through the use of

---

[*] The Honorable Monroe G. McKay, Senior United States Circuit Judge for the Tenth Circuit, sitting by designation.

[**] This disposition is not appropriate for publication and may not be cited to or by a court of this circuit except as may be provided by Ninth Circuit Rule 36–3.

1. Section 9.05.010 makes it a crime for "any [unauthorized] person" to enter an area surrounded by barrier tape. SER at 18.

2. The record is unclear as to the cause and nature of this incident. However, it is clear from the videotape submitted by Plaintiff that some officers used force against observers in the crowd. We do not comment on this use of force.

3. In backing up, Plaintiff was not going toward either of the sidewalks, the area authorized for those viewing the march (i.e., the other side of the police tape).

pain holds. In addition, Plaintiff claims that at one point, when Officer Kelly was struggling to get Plaintiff to stand, Officer Lance grabbed hold of Plaintiff's throat and lifted him. Plaintiff concedes that, although not actively resisting arrest, he was engaged in passive resistance as he refused to cooperate with the officers' orders. For example, Plaintiff admits that he "did not stand up on his own when asked to do so...." ER at 105.

On appeal, Plaintiff challenges the district court's order adopting the report and recommendation of the magistrate judge to grant Officer Kelly and Officer Lance's motion for summary judgment.

Plaintiff claims that the district court, in granting the motion for summary judgment, erred on several grounds. First, Plaintiff contends that the magistrate judge was biased against Plaintiff. Second, Plaintiff asserts that sufficient factual disputes exist as to several of his claims, rendering this case improper for summary judgment.[4]

I. Bias

The only properly articulated bias claim in Plaintiff's opening brief is his assertion that the magistrate judge considered facts not properly before him. Consideration of extra-judicial facts can be improper. *See Liteky v. United States*, 510 U.S. 540, 554–55, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). However, the facts recited by the magistrate judge, to which Plaintiff now objects, were testified to by Plaintiff during his deposition-a line of questioning to which he did not object. Because of his failure to object, Plaintiff has waived any argument related to the consideration of this evi-

dence. *See Fenton v. Freedman*, 748 F.2d 1358, 1360 (9th Cir.1984).

II. Summary Judgment

We review the district court's grant of Defendants' motion for summary judgment *de novo. Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir.2000) (en banc). In so doing, we view the facts in the light most favorable to Plaintiff. *Balint v. Carson City*, 180 F.3d 1047, 1050 (9th Cir.1999).

A. False Arrest

■ Plaintiff contends that the district court erred because Officer Kelly lacked probable cause in effecting Plaintiff's arrest. Plaintiff claims that the arrest could not have been based on probable cause because "Plaintiff was simply acting in accordance with the other members of the press in the street." Aplt's Br. at 29. Whether others were or were not arrested for violating the same city ordinance is not relevant to the determination of probable cause. Probable cause exists if, "at th[e] moment [of arrest,] the facts and circumstances within the [officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). Because § 9.05.010 made it illegal to cross the barrier tape and it is undisputed that Officer Kelly knew Plaintiff had crossed the barrier tape, Officer Kelly had probable cause to arrest Plaintiff.

B. Excessive Force

Plaintiff next alleges that the district court erred because the officer used exces-

---

4. Plaintiff also claims the district court erred in ruling that Officers Kelly and Lance were entitled to qualified immunity because their actions were unreasonable. In light of our decision on the merits, we do not reach the issue of qualified immunity.

sive force. The Fourth Amendment requires officers to use only an amount of force that is objectively reasonable in light of the surrounding circumstances. *Graham v. Connor*, 490 U.S. 386, 396–97, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Assessment of whether an officer's actions were objectively reasonable is based on the totality of the circumstances. *Id.* at 396, 109 S.Ct. 1865.

Plaintiff asserts three separate but connected claims of excessive force: (1) that Officer Kelly "threw" him to the ground, (2) that the handcuffs were too tight, and (3) that Officer Lance choked him.

### 1. Thrown to Ground

■ According to the undisputed facts, Officer Kelly twice forced Plaintiff to the ground in effecting the arrest. "Not every push or shove, even if it may seem unnecessary in the peace of a judge's chambers[,] violates the Fourth Amendment." *Graham*, 490 U.S. at 396, 109 S.Ct. 1865 (internal quotations omitted). Plaintiff's arrest occurred because he crossed the police tape. In so doing, Plaintiff interjected himself into a tense and uncertain environment. *See id.* at 396–97, 109 S.Ct. 1865. Although Plaintiff's accusation of being "thrown" to the ground evokes a sense of excessive force, the undisputed facts do not support Plaintiff's characterization. When pressed about what Plaintiff meant by being "thrown down," he stated, "I believe [Officer Kelly] grabbed an arm and used his body weight against mine and pushed me right down violently to the ground." SER at 37. The evidence presented by Plaintiff is insufficient to support a claim of excessive force.

### 2. "Over-tight" Handcuffs

■ Plaintiff alleges that Officer Kelly over-tightened his handcuffs and refused to loosen them. We have recognized that excessively tight handcuffing can constitute a Fourth Amendment violation. *See, e.g., Wall v. County of Orange*, 364 F.3d 1107, 1112 (9th Cir.2004); *LaLonde v. County of Riverside*, 204 F.3d 947, 960 (9th Cir.2000); *Palmer v. Sanderson*, 9 F.3d 1433, 1436 (9th Cir.1993); *Hansen v. Black*, 885 F.2d 642, 645 (9th Cir.1989). However, in those cases, the plaintiffs either suffered damage to their wrists as a consequence of the handcuffs or the plaintiffs complained *to the officers* about the handcuffs being too tight. *See Wall*, 364 F.3d at 1109–10, 1112; *LaLonde*, 204 F.3d at 952, 960; *Palmer*, 9 F.3d at 1434–36; *Hansen*, 885 F.2d at 645. Absent in this case is evidence of a physical manifestation of injury and notification to the police that the handcuffs were too tight.[5] Therefore, Plaintiff cannot establish that Officer Kelly unreasonably tightened the handcuffs.

### 3. Wrist Twisting and Chokehold

■ Plaintiff states that after the initial arrest and handcuffing Officer Kelly moved him by twisting his wrists while Officer Lance choked him in an effort to get him to move. What renders these facts legally insufficient to support a claim of excessive force is Plaintiff's refusal to stand when requested and his refusal to cooperate when the officers lifted him. Faced with Plaintiff's resistance, combined with the tense circumstances presented, the officers' use of force was not unreasonable. *See Forrester v. City of San Diego*, 25 F.3d 804, 807–08 (9th Cir.1994); *Eberle v. City of Anaheim*, 901 F.2d 814, 820 (9th Cir.1990).

---

**5.** Plaintiff did complain, in response to an inquiry from observers in the crowd, that his wrists hurt. However, Plaintiff never alleged that Officer Kelly heard this complaint, let alone that he directed the complaint to Officer Kelly.

### C. Selective Enforcement [6]

 Plaintiff complains that he was not treated the same as other journalists at the scene, in violation of his rights under the Equal Protection Clause of the Fourteenth Amendment. Plaintiff's selective enforcement claim is based on disparate impact. Because the barrier-tape policy is facially neutral, however, the only way Plaintiff's claim can survive is if "some invidious or discriminatory purpose underlies the policy." *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir.2001). Plaintiff has failed to present facts that would support even an inference that a discriminatory purpose underlies the police-tape ordinance.

### D. State-law Claims

Plaintiff appeals the granting of summary judgment as to his claims of intentional infliction of emotional distress, intentional destruction of property, and negligence. Because Defendants are officers of the state, Plaintiff must proceed under the Idaho Tort Claims Act. Idaho law grants an exception to liability to government employees for any claim "which ... [a]rises out of or results from riots, unlawful assemblies, public demonstrations, mob violence or civil disturbances" so long as the officer acts without criminal intent or malice and is acting within the course and scope of employment. Idaho Code § 6–904(6). Plaintiff has the burden to prove that this exception to liability does not apply. *See Harris v. State, Dep't of Health and Welfare*, 123 Idaho 295, 847 P.2d 1156, 1159 n. 1 (1993).

Plaintiff has failed to carry that burden. The district court correctly found that an exception to liability for the officers existed pursuant to Idaho Code § 6–904(6). Plaintiff's arrest arose from his violation of the law during a public demonstration. Based on that violation, probable cause existed to arrest Plaintiff. The arrest was effectuated through the use of reasonable force. Viewing these facts in combination demonstrates that the officers acted without malice or criminal intent, thereby rendering the district court's grant of immunity pursuant to the Idaho Tort Claims Act appropriate.

AFFIRMED.

---

**6.** Plaintiff complains that the district court did not consider his Equal Protection (selective enforcement) claim. Plaintiff is mistaken. Although the report and recommendation did not address this issue, the district judge's order adopting the report and recommendation, after outlining the appropriate standard for analyzing the issue, did.

