COLLOTON, Circuit Judge.
Marcus Blazek sued Officers Juan Santiago and Dan Roth, the city of Iowa City, Iowa, and the State of Iowa, alleging constitutional violations pursuant to 42 U.S.C. § 1983 and state-law violations. The district court[1] denied the officers’ motions for summary judgment on the basis of quali-fled immunity and denied the motion for summary judgment of Officer Roth and the City with respect to most of the state-law claims. The court also dismissed all claims against the State and negligence-based state-law claims against Roth and the City.
Santiago and Roth appeal the court’s denial of their motion for summary judgment based on qualified immunity. We affirm that ruling, albeit on narrower grounds than those set forth in the district court’s order. We lack jurisdiction over Roth’s appeal of the district court’s denial of summary judgment on the state-law claims.
I.
We recite the facts in the light most favorable to Blazek. In February 2009, Blazek was the roommate of Richard Feld-hacker, who was on federal parole. As a condition of Feldhacker’s parole, he agreed to warrantless searches of his residence. Feldhacker had disclosed in earlier monthly reports to his probation officer that he had a roommate, but his most recent monthly reports had not named a roommate.
After Feldhacker failed a drug test, his parole officer requested that Officer Juan Santiago of the State of Iowa conduct a home check. Santiago was a High Risk Unit Parole/Probation Officer whose main duty was to conduct home checks. On February 24, 2009, around 6 p.m., Santiago arrived at Feldhacker’s apartment. He observed lights on in the apartment, so he knocked on the door. Santiago says that he heard someone approach the door and saw someone look out the peephole. Santiago identified himself as “Probation.” *922 He avers that the person behind the door then ran away and that he promptly heard a toilet flush.
Santiago requested backup from the Iowa City Police Department. Officer Dan Roth arrived in response, just as the apartment manager was unlocking Feld-hacker’s door for Santiago. Santiago and Roth entered the apartment; Santiago led with his gun drawn. They encountered Blazek, who was walking out of the bathroom wearing only a towel. Santiago did not recognize Blazek, but he knew Blazek was not Feldhacker. According to Blazek, he never heard the knock at the door and did not look through the peephole or run away to flush the toilet.
The officers cleared the apartment, and all three men entered Blazek’s bedroom. The officers asked Blazek to sit on his bed and to identify himself. Blazek was “belligerent,” refused to identify himself except as “the roommate,” and would not stay seated as directed. According to the officers, Blazek smelled of alcohol, and Blazek acknowledges drinking one or two beers that evening.
Blazek asserts that Santiago was yelling at him and accusing him of flushing drugs down the toilet. According to Blazek, he eventually responded to Santiago’s yelling by saying that perhaps he should talk to a lawyer. Blazek says that Santiago then grabbed his arm, twisted the arm up behind him, and threw him to the ground, while Roth jumped on him and handcuffed him. Blazek alleges that after he was handcuffed, the officers grabbed his arms and “jerked” him up onto his bed.
The officers left Blazek handcuffed and sitting on the bed while they searched the apartment. Blazek was then allowed to dress and leave the apartment. At the time, Blazek did not complain of pain. But the next day, after going to work, Blazek went to a doctor and was diagnosed with a separated shoulder and an ankle fracture, described as a “small chip fracture.” Medical records from a later visit in May 2009 show a torn rotator cuff, and the district court reasoned that a jury could find that all of the injuries resulted from the force applied by Santiago and Roth.
Blazek sued, claiming the officers violated his Fourth Amendment rights by unlawfully seizing him and by using excessive force against him. The officers moved for summary judgment on the basis of qualified immunity, but the district court ruled that Blazek presented sufficient evidence, if believed, to prove that the officers violated his clearly established rights under the Fourth Amendment. The district court also denied a motion by Roth and the City for summary judgment on most of Blazek’s state-law claims. The court dismissed two claims of negligent supervision and training against Roth and the City, and dismissed the State from the case entirely. Santiago and Roth appealed.
We have jurisdiction to review an interlocutory appeal of the denial of qualified immunity under the collateral order doctrine. Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). Qualified immunity shields a public official from liability for civil damages when his “conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.” Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). “Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law.” Stanton v. Sims, — U.S. -, 134 S.Ct. 3, 5, 187 L.Ed.2d 341 (2013) (internal quotations omitted). The officers are entitled to qualified immunity unless (1) the evi *923 dence, viewed in the light most favorable to Blazek, establishes a violation of a constitutional or statutory right, and (2) the right was clearly established at the time of the violation, such that a reasonable official would have known that his actions were unlawful. See Pearson v. Callahan, 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). We review a district court’s qualified immunity determination de novo and may resolve the appeal under either prong of the analysis. Id. at 236, 129 S.Ct. 808.
II.
As the district court correctly summarized, it is undisputed that “Blazek was belligerent, initially would not respond to questions about his identity, and would not stay seated as directed, facts it should be noted which are not contradicted by Mr. Blazek in his affidavit.” R. Doc. 46, at 16-17. It was therefore reasonable for the officers to detain and handcuff Blazek as part of their investigation into Feld-hacker’s alleged parole violation. See United States v. Martinez, 462 F.3d 903, 907 (8th Cir.2006) (explaining that handcuffing “can be a reasonable precaution during a Terry stop to protect [officers’] safety and maintain the status quo”).
Blazek contends, however, that Roth and Santiago used excessive force during the encounter. In his affidavit with numbered paragraphs, Blazek identifies at least two discrete uses of force by the officers:
17. ... Officer Santiago grabbed my right arm, twisted it upward and behind my back and then threw me to the floor. Officer Roth then jumped on me and handcuffed me while both officers were holding me down.
18. After applying the handcuffs, Officers Santiago and Roth grabbed me by my arms and jerked me from the floor onto the mattress of my bed.
R. Doc. 23-3, at 6.
Taking the handcuffing maneuver first, the law did not clearly establish in February 2009 that the officers acted unconstitutionally. In 2002, one court described a handcuffing technique almost identical to this one — where an officer “grabbed plaintiffs arm, twisted it around plaintiffs back, jerking it up high to the shoulder and then handcuffed plaintiff as plaintiff fell to his knees screaming” — as “a relatively common and ordinarily accepted non-excessive way to detain an arrestee.” Rodriguez v. Farrell, 280 F.3d 1341, 1351 (11th Cir.2002). This court then rejected an excessive-force claim in 2006 where an officer “forcefully threw” the plaintiff to the ground, pinned him down, and placed his weight into the plaintiffs back before handcuffing him, Wertish v. Krueger, 433 F.3d 1062, 1068 (8th Cir.2006) (Bye, J., concurring), even though the plaintiff — like Blazek in his version — was only “passively resistant.” Id. at 1066-67 (majority opinion). The plaintiff in Wertish suffered only de minimis injury, but a reasonable officer could understand the decision to approve as reasonable the use of a forceful throw during handcuffing. Qualified immunity protects officers who used essentially the same maneuver in this case, even if it happened to cause more serious injury. Cf. Chambers v. Pennycook, 641 F.3d 898, 906 (8th Cir.2011) (explaining that “[t]he governing rule should not turn on ... unpredictable and fortuitous consequences of an officer’s use of force”).
Our decision in Kukla v. Hulm, 310 F.3d 1046 (8th Cir.2002), is not sufficient to show that Santiago and Roth violated clearly established rights in handcuffing Blazek. The allegation in Kukla was that although the suspect “did not resist arrest,” an officer “forced him against his *924 truck, twisted his arm, and raised it high behind his back injuring his collar bone, shoulder, neck, and wrist.” Id. at 1050. The suspect then claimed that the handcuffs applied by the officer “were so tight that they broke his wrist and were not loosened for fifteen minutes despite his repeated complaints.” Id. The absence of any resistance and the use of handcuffs to break the suspect’s wrist distinguish Kuk-la from Blazek’s case. Especially where the use of force alleged here likely resides on the “hazy border between excessive and acceptable force,” Saucier v. Katz, 588 U.S. 194, 206, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), we cannot conclude that only a “plainly incompetent” officer would have believed the force used to handcuff Blazek was constitutionally reasonable.[2]
In our view, the narrqwer scope of qualified immunity urged by the partial dissenting opinion would impose an unreasonable burden on the police officers and cannot be squared with the more robust version of the doctrine espoused recently by the Supreme Court. Blazek must show that “every reasonable official would have understood that what he is doing violates” a constitutional right, Ashcroft v. al-Kidd, - U.S. -, 131 S.Ct. 2074, 2083, 179 L.Ed.2d 1149 (2011) (internal quotation omitted), and that the constitutional question was “beyond debate.” Id.; see Lane v. Franks, — U.S. -, 134 S.Ct. 2369, 2383, 189 L.Ed.2d 312 (2014); Stanton, 134 S.Ct. at 7. We must not “define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced.” Plumhoff v. Rickard, — U.S. -, 134 S.Ct. 2012, 2023, 188 L.Ed.2d 1056 (2014) (internal quotation and citation omitted).
It is clear in light of Wertish that if the officers had lifted the belligerent Blazek off his feet, thrown him to the ground, and jumped on his back to handcuff him, without causing the alleged injury to his ankle or shoulder, then the officers would have acted reasonably or at least be entitled to qualified immunity. But the partial dissent would hold that if Blazek instead had one foot planted on the floor, and the torque of the throw to the ground caused his ankle to twist and fracture, then the officers are subject to suit and liability for *925 damages. Similarly, an awkward landing that caused a separated shoulder would trigger liability, but a smoother alighting that resulted in ordinary bruising would not. And if the throw had caused merely a sprained ankle with no fracture, then who knows? Immunity from suit and liability for damages would depend on whether a reviewing judge later decides that use of the forceful throw allowed in Wertish caused an unacceptable degree of injury. Qualified immunity is designed to free police officers from the risk of suit and liability based on such fine distinctions. One can debate the Fourth Amendment ruling in Wertish, see 433 F.3d at 1067-68 (Bye, J., concurring), but taking the decision as a given, it is unrealistic to expect a police officer, in the heat of the moment, to discern whether a particular ankle injury would result from a takedown or to plan a careful landing for the detainee’s shoulder.
The same goes for the force applied to Blazek’s arms during the handcuffing. A reasonable officer reading the annals of the federal courts in 2009 would know that the technique like that applied here— where an officer “grabbed plaintiffs arm, twisted it around plaintiffs back, jerking it up high to the shoulder” — was “a relatively common and ordinarily accepted non-excessive way to detain an arrestee.” Rodriguez, 280 F.3d at 1351. Blazek alleges that Santiago “grabbed [his] right arm, twisted it upward and behind [his] back.” Yet the partial dissent would hold that if the detainee complains of no pain during the incident, but discovers later that otherwise permissible “twisting” of his arm upward and behind his back caused a tear in his rotator cuff, then the officers have violated a clearly established right and are subject to suit and liability for damages. It was not “beyond debate” in 2009 that the constitutionality of the officers’ actions here depended on whether their use of a “common and ordinarily accepted” handcuffing method caused injury to the detainee’s shoulder area.[3]
The officers’ jerking of Blazek from the floor to his bed, however, presents a discrete use of force for consideration under the Fourth Amendment. At that point in the encounter, Blazek was handcuffed and under control. In his telling, Blazek was not resisting and posed no threat to the officers. He was not suspected of any serious offense; he was detained only because he was present at Feldhacker’s residence and would not stay seated and identify himself when questioned. Nonetheless, the officers allegedly “jerked” him up by the arms with sufficient force to cause serious injury to his shoulder area.
It was clearly established in 2009 that when a person is subdued and restrained with handcuffs, a “gratuitous and completely unnecessary act of violence” is unreasonable and violates the Fourth Amendment. Henderson v. Munn, 439 F.3d 497, 503 (8th Cir.2006) (alteration omitted). Pepper spray administered in the face of a subdued arrestee, id., and *926 handcuffs applied so tightly — despite repeated complaints of pain — that they broke the wrist of a compliant arrestee, Kukla, 810 F.3d at 1050, were known to violate the Fourth Amendment. There is no prior case involving Blazek’s precise factual scenario, but he need not show that the “very action in question has previously been held unlawful” to overcome qualified immunity, as long as the unlawfulness was apparent in light of preexisting law. Anderson v. Creighton, 488 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).
Reasonable officers surely could bring Blazek up from the floor in some manner after he was handcuffed, and officers are not required to treat detainees as gently as possible. See Jackson v. City of Bremerton, 268 F.3d 646, 652-53 (9th Cir.2001) (no excessive force where officers “roughly pulled [arrestee] up to her feet during her arrest”); Thompson v. City of Lawrence, 58 F.3d 1511, 1516 (10th Cir.1995) (no excessive force where record showed that officers did not “yank” wrists of handcuffed arrestee with injured shoulder, but rather “lifted” or “raised” him from the floor). But Blazek’s allegation is that the officers did more than lift him up roughly. If Blazek can prove at trial that he was subdued and compliant, but that the officers grabbed him by the arms and gratuitously “jerked” him from the floor onto the bed, using enough violent force to cause significant injury, then we agree with the district court that a reasonable jury could find a violation of the Fourth Amendment. And the law was sufficiently developed to show that such a violation— allegedly involving unnecessary violence against a handcuffed and compliant detainee — would contravene clearly established law as of 2009.
For the foregoing reasons, the order of the district court denying the motions of Santiago and Roth for summary judgment based on qualified immunity is affirmed. Because our resolution of the qualified-immunity appeal does not necessarily resolve Blazek’s state-law claims against Roth and the City, we lack jurisdiction to consider the portion of Roth’s interlocutory appeal concerning those claims. See Lockridge v. Bd. of Trs. of Univ. of Ark., 315 F.3d 1005, 1012 (8th Cir.2003) (en banc).

. The Honorable Ross A. Walters, United States Magistrate Judge for the Southern District of Iowa, sitting by consent of the parties pursuant to 28 U.S.C. § 636(c).

. Cases from other circuits likewise suggest the absence of a clearly established prohibition on the officers’ actions in handcuffing Blazek. Goodrich v. Everett, 193 Fed.Appx. 551, 554, 556-57 (6th Cir.2006) (rejecting excessive-force claim where officers allegedly kneed plaintiff in the side until they broke ribs and kicked plaintiff, where the "kneeing and kicking occurred not when Goodrich was neutralized, but while the officers were handcuffing him,” and where plaintiff was not resisting but officers reasonably believed plaintiff might flee); James v. York Cnty. Police Dep’t, 160 Fed.Appx. 126, 134 (3d Cir.2005) (per curiam) (rejecting excessive-force claim where plaintiff complained that officers threw him to the ground, roughly stepped on him, and handcuffed him); Lee v. Hefner, 136 Fed.Appx. 807, 812-13 (6th Cir.2005) (rejecting excessive-force claim where plaintiff alleged that officer forced him to the ground, placed a knee on his back, and used a wrist lock to handcuff him); Liiv v. City of Coeur D’Alene, 130 Fed.Appx. 848, 851-52 (9th Cir.2005) (rejecting excessive-force claim of plaintiff who engaged in "passive resistance” by refusing to stand up and was “thrown” to the ground when officer grabbed an arm, used his body weight against plaintiff, and pushed him “right down violently to the ground”); Mason v. Lowndes Cnty. Sheriff's Dep’t, 106 Fed.Appx. 203, 208 (5th Cir.2004) (rejecting excessive-force claim where plaintiff alleged that officers slammed him to the floor and put a knee in his back); Pullen v. Vandertuin, No. 98-41473, 2000 WL 1056090, at *2 (5th Cir. July 17, 2000) (rejecting excessive-force claim where officer threw plaintiff to the ground and stood on him to bring plaintiff under control, even accepting that plaintiff was not resisting arrest).

. Two of the partial dissent’s favored out-of-circuit cases do not even involve handcuffing. See Morelli v. Webster, 552 F.3d 12, 22-25 (1st Cir.2009); Robison v. Via, 821 F.2d 913, 923-24 (2d Cir.1987). The third — a decision whose unpublished status means that it provides little, if any, support for imposing liability based on clearly established law, see Hogan v. Carter, 85 F.3d 1113, 1118 (4th Cir.1996) (en banc) — involved a claim that officers kicked an arrestee in the ankle as part of a handcuffing encounter. Minchella v. Bauman, 72 Fed.Appx. 405, 409-10 (6th Cir.2003). These authorities fall well short of "a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful.” Wilson v. Layne, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999).