NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

OCT 13 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| WILLIAM L. HARRIS, | No. 22-35346 |
| Plaintiff-Appellant, | D.C. No. 2:20-cv-01045-RSM |
| v. | |
| CITY OF KENT; JACOB D. REED; JASON NIXON; CITY OF KENT POLICE DEPARTMENT; CURT THORMBURG; JLL PROPERTY MANAGEMENT, | MEMORANDUM[*] |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Western District of Washington
Ricardo S. Martinez, District Judge, Presiding

Submitted October 11, 2023[**]

Before: BENNETT, SUNG, and H.A. THOMAS, Circuit Judges.

William L. Harris appeals the district court's grant of summary judgment to

defendants Jones Lang LaSalle Americas, Inc. (JLL) and Curt Thornburg, in which

the court dismissed with prejudice all of Harris's claims against JLL and

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]    The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

Thornburg; and the court's partial grant of summary judgment to defendants City of Kent (the City) and Jacob D. Reed, in which the court dismissed with prejudice some of Harris's claims against the City and Reed. Harris also appeals the district court's later grant of summary judgment to the City, Reed, and Jason Nixon, in which the court dismissed with prejudice Harris's remaining claims against these defendants.

Harris seeks reversal of the district court's grants of summary judgment with respect to his claims for (i) unlawful stop and arrest under the Fourth Amendment, (ii) excessive force under the Fourth Amendment, (iii) defamation under 42 U.S.C. § 1983, (iv) violation of the Fourteenth Amendment right to equal protection, (v) negligence, and (vi) conspiracy against rights under 18 U.S.C. § 241.

We have jurisdiction under 28 U.S.C. § 1291. We review the district court's grant of summary judgment de novo, *Hughes v. Rodriguez*, 31 F.4th 1211, 1218 (9th Cir. 2022), and may affirm on any ground finding support in the record, *M & T Bank v. SFR Invs. Pool 1, LLC*, 963 F.3d 854, 857 (9th Cir. 2020). Where there are material factual disputes, we "view the facts and draw reasonable inferences in favor of the nonmoving party," *O'Doan v. Sanford*, 991 F.3d 1027, 1035 (9th Cir. 2021), unless the party's allegations are "blatantly contradicted by the record," *Scott v. Harris*, 550 U.S. 372, 380 (2007). "[W]here, as here, a plaintiff proceeds pro se, we must 'construe the pleadings liberally' and 'afford the petitioner the

2

benefit of any doubt.'" *Boquist v. Courtney*, 32 F.4th 764, 774 (9th Cir. 2022) (quoting *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010)). We affirm.[1]

1. "[A]n officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). "A lawful arrest requires officers to have probable cause," *Hill v. City of Fountain Valley*, 70 F.4th 507, 515 (9th Cir. 2023), which exists when the "available facts suggest a fair probability that the suspect has committed a crime," *id.* (quoting *Tatum v. City & Cnty. of San Francisco*, 441 F.3d 1090, 1094 (9th Cir. 2006)).

Because Reed observed cords running from a light pole into Harris's car, he had a reasonable, articulable suspicion that Harris was stealing electricity and thereby committing theft in the third degree, a misdemeanor under Washington state law. *See* Wash. Rev. Code § 9A.56.050; *State v. Kolisynk*, 49 Wash. App. 890, 893 (1987) (recognizing electricity is a "service" that can be stolen). Reed's decision to conduct an investigatory stop was therefore consistent with the Fourth Amendment. And the cord running from the light pole into Harris's car suggested a fair probability that Harris had committed a crime. There was a fair probability, moreover, that Harris committed the misdemeanor of obstructing a police officer

---

[1] Because the parties are familiar with the facts, we do not recount them here.

by intentionally delaying Reed's investigation. *See* Kent City Code 9.02.630. Reed therefore had probable cause to arrest Harris.

2. Harris's Fourth Amendment excessive force claim requires us to determine whether the officers' manner of handcuffing Harris was "objectively reasonable" in light of the circumstances confronting them. *See Williamson v. City of Nat'l City*, 23 F.4th 1146, 1151 (9th Cir. 2022); *Wall v. Cnty. of Orange*, 364 F.3d 1107, 1112 (9th Cir. 2004) ("[O]verly tight handcuffing can constitute excessive force."). Harris must provide specific facts, however, to show that the force used against him was unreasonable. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001).

In the operative complaint, Harris alleges (i) that his "hands and wrists had been severely twisted and pulled by Reed and . . . Nixon prior to the severe handcuffing by Reed," (ii) that he told Reed the handcuffs were "cutting into his hands," and (iii) that the cuffs caused him to experience "sharp pains." Although Reed grabbed Harris's wrist and shoulder in order to pull Harris out of Harris's vehicle, the video evidence in the record contradicts Harris's allegation that Reed "severely twisted and pulled" his hands and wrists. *See Scott* 550 U.S. at 380. Reed responded to Harris's request to have the handcuffs adjusted. *Cf. Wall*, 364 F.3d at 1110, 1112 (officer did not respond to suspect's two requests to have handcuffs adjusted). And after following Reed's recommendation to adjust his seating

4

position in the back of the patrol vehicle, Harris did not cry out in pain, complain of further discomfort, or repeat his request, such that a reasonable officer in Reed's position would not have known that Harris, as he alleges, was "f[ighting] the pain the rest of the afternoon." *See Rice v. Morehouse*, 989 F.3d 1112, 1121 (9th Cir. 2021) (reasonableness of particular use of force must be judged from perspective of reasonable officer at scene). The officers therefore did not use excessive force in handcuffing Harris.

3. To establish a defamation claim under 42 U.S.C. § 1983, Harris must allege that a defamatory statement that injured his reputation either (i) "was inflicted in connection with a federally protected right" or (ii) "caused the denial of a federally protected right." *Crowe v. Cnty. of San Diego*, 608 F.3d 406, 444 (9th Cir. 2010).[2] In the operative complaint, Harris alleges that Reed defamed him by falsely telling Thornburg that Harris had been caught stealing electricity; in his brief, Harris argues that Thornburg defamed him by failing to inform Reed that the light from which Harris was allegedly stealing electricity was not operational at the time of the arrest. But Harris does not allege an injury to his reputation involving a federally protected right. And Thornburg is not a proper defendant under § 1983.

---

[2] We construe Harris's defamation claim as a § 1983 "defamation-plus" claim because there is no cognizable defamation claim under 28 U.S.C. § 4101, the statute listed in the operative complaint. *See Boquist*, 32 F.4th at 774 (when a plaintiff proceeds pro se, we must construe the pleadings liberally).

*See Chaudhry v. Aragón*, 68 F.4th 1161, 1169 (9th Cir. 2023) (only persons acting under color of state law are proper defendants under § 1983). Harris's defamation claim therefore fails as a matter of law.

4. Although Harris does not expressly mention the right to equal protection under the Fourteenth Amendment in his opening brief, he argues that race played a role in the officers' decision to investigate him. Given the record evidence, Harris cannot show discriminatory purpose because he cannot show that the officers chose to investigate him because of his race. *See Rosenbaum v. City and Cnty. of S.F.*, 484 F.3d 1142, 1152–53 (9th Cir. 2007). The video evidence shows that there were three vehicles near the telephone pole into which Harris was plugged. It also shows that the officers checked all three vehicles for occupants, contrary to Harris's implication that the officers focused their investigation on him because of his race. Harris's equal protection claim therefore fails as a matter of law.

5. Concerning his negligence claim, Harris argues that by failing to address racism and violent misconduct within its police department, the City "played a direct role" in the actions of the officers on the day of Harris's arrest. This claim fails as a matter of law under Washington's public duty doctrine. Under that doctrine, Harris can only "establish a duty in tort against a governmental entity" by showing "that the duty breached was owed to an individual and was not merely a general obligation owed to the public." *Beltran-Serrano v. City of Tacoma*, 442

6

P.3d 608, 614 (Wash. 2019). Harris has not shown, or even alleged, that the City owed him a duty to screen or supervise its police officers over and above any such duty it owed to the public.

6. Harris's claim for conspiracy against rights under 18 U.S.C. § 241 fails as a matter of law because 18 U.S.C. § 241 is a criminal statute which does "not give rise to civil liability." *Allen v. Gold Country Casino*, 464 F.3d 1044, 1048 (9th Cir. 2006).

7. We do not consider Harris's arguments concerning intentional infliction of emotional distress. Although a claim of this type appeared in Harris's initial complaint, it was omitted from his amended complaints, including the operative complaint. *See Ramirez v. Cnty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015) (an amended complaint supersedes the original).

**AFFIRMED.**