United States Court of Appeals

For the Eighth Circuit

_____

No. 18-3054
_____

Bridget M. Murphy

*Plaintiff - Appellee*

v.

A. A. Engelhart

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: April 16, 2019
Filed: August 14, 2019

_____

Before LOKEN, WOLLMAN, and STRAS, Circuit Judges.

_____

LOKEN, Circuit Judge.

Missouri State Highway Patrol Trooper Aaron Engelhart stopped Bridget Murphy for driving on top of the right outside lane line on a federal highway. When Murphy refused to comply with Engelhart's instructions to remain in his patrol car during the traffic stop, Engelhart took Murphy to the ground, breaking her knee.

Murphy brought this 42 U.S.C. § 1983 action against Engelhart,[1] alleging Fourth Amendment excessive force and unlawful seizure claims, and assault and battery claims under state law. The district court denied Engelhart summary judgment on the excessive force claim because "[t]he critical portion of the encounter in which plaintiff alleges that Trooper Engelhart used excessive force against her . . . happens out of view of the dash cam video."

Engelhart appeals the district court's denial of summary judgment on the excessive force claim, arguing he is entitled to qualified immunity because Murphy failed to "present sufficient facts which, when construed in the light most favorable to her, show (1) the officer violated a constitutional right and (2) the right was clearly established at the time of the violation." Montoya v. City of Flandreau, 669 F.3d 867, 872 (8th Cir. 2012). Viewing the undisputed facts most favorably to Murphy, the non-moving party, we conclude that Engelhart's actions did not violate Murphy's clearly established constitutional right and therefore reverse.

On the night in question, Murphy had several drinks before getting in her car "a little before 10:00" p.m. to drive to work. Soon after, Engelhart saw Murphy drive on top of the right outside lane line and turned on his patrol car's emergency lights. Murphy pulled onto the shoulder of the highway and stopped. Engelhart's dashcam video recorded much, but not all, of the ensuing encounter.

Engelhart told Murphy he stopped her because she "went off the right side of the road there a couple times" and asked her to sit in his patrol car while he checked her license. Murphy initially complied but exited Engelhart's car a few minutes later and walked back to her vehicle. Engelhart followed her, grabbed her arm, and instructed her at least seven times to go back and sit in his car. Murphy refused and

---

[1]The parties dismissed Murphy's additional claims against the Missouri State Highway Patrol by stipulation.

-2-

repeatedly tried to pull her arm from Engelhart's grasp. Engelhart told Murphy at least twice to "turn around." Murphy again did not comply. Using an arm bar, Engelhart moved Murphy to the front of the patrol car, where they slid to the passenger side, out of the dashcam video's view. At this point, their stories diverge. According to Murphy, whose account we credit for purposes of this appeal, Engelhart "threw" or "shove[d]" her to the ground and landed on top of her. The force of the fall broke Murphy's knee. Murphy was then transported to the hospital, where a doctor surgically treated the broken knee.

Qualified immunity shields an officer if his "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). To establish that her right was clearly established, Murphy must identify "controlling authority" or "a robust 'consensus of cases of persuasive authority'" that "placed the statutory or constitutional question beyond debate" at the time of Engelhart's alleged violation. Ashcroft v. al-Kidd, 563 U.S. 731, 741-42 (2011). "Use of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." Kisela v. Hughes, 138 S. Ct. 1148, 1153 (2018).

In this case, Murphy denied that she assaulted Engelhart before he threw her to the ground. But it is undisputed that she disobeyed Engelhart's repeated instructions to return to his car, was uncooperative when Engelhart grabbed her and told her to turn around, and repeatedly tried to pull her arm away from his grasp. In addition, it is undisputed that Murphy had been drinking and driving erratically, and the dashcam video shows their struggle took place on the shoulder of a dark highway, while several cars drove by. In these circumstances, accepting the facts of the takedown as Murphy describes them, we cannot conclude that Engelhart violated a "clearly established" constitutional right when he threw or shoved Murphy to the ground.

At the time of Murphy's injury, it was clearly established that an officer could not "throw to the ground a nonviolent, suspected misdemeanant who was not threatening anyone, was not actively resisting arrest, and was not attempting to flee." Montoya, 669 F.3d at 873. But in Carpenter v. Gage, we held that it was reasonable for a law enforcement officer to tase an uncooperative suspect who "refused to offer his hands when ordered to do so" and physically resisted arrest. 686 F.3d 644, 649-50 (8th Cir. 2012). In Blazek v. City of Iowa City, when a belligerent occupant refused to "stay seated as directed" while officers completed a search, the officers grabbed his arm, twisted it upward behind his back, threw him to the ground, jumped on his back, and handcuffed him. 761 F.3d 920, 922 (8th Cir. 2014). Though we held that the officers were not entitled to qualified immunity for a subsequent injury, we also held: "It is clear . . . that if the officers had lifted the belligerent Blazek off his feet, thrown him to the ground, and jumped on his back to handcuff him, without causing the alleged [subsequent] injury . . . then the officers would have acted reasonably or at least be entitled to qualified immunity." Id. at 924. In Ehlers v. City of Rapid City, which involved an incident before Murphy's injury, we held it was constitutional for a police officer to use a "spin takedown" on a man who ignored twice-repeated instructions "to put his hands behind his back." 846 F.3d 1002, 1011 (8th Cir. 2017). This year, the Supreme Court vacated denial of qualified immunity to an officer who executed a takedown of a man who disobeyed the officer's command not to close an apartment door and then tried to "brush past" the officer. City of Escondido v. Emmons, 139 S. Ct. 500, 502-04 (2019).

In light of these authorities, we cannot conclude that Murphy has identified "a robust consensus of cases" that placed the excessive force question "beyond debate" at the time of Engelhart's alleged violation. Ashcroft v. al-Kidd, 563 U.S. at 741-42. Accordingly, Engelhart's takedown did not violate a clearly established constitutional right. The order of the district court denying Engelhart summary judgment on Count I of the Second Amended Complaint is reversed.

_____