# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-3379

_____

Juan Dontae Shelton,

*Plaintiff - Appellee,*

v.

Brian Stevens,

*Defendant - Appellant,*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: November 15, 2019
Filed: July 9, 2020

_____

Before COLLOTON, WOLLMAN, and BENTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Juan Shelton sued police officer Brian Stevens under 42 U.S.C. § 1983, alleging that Stevens used excessive force and seeking damages for injuries sustained during Shelton's arrest. The district court denied Stevens's motions for summary judgment, and Stevens appeals to assert a defense of qualified immunity. We agree with the

district court that, on balance, the challenged use of force was unreasonable, but we conclude that the question is not beyond debate, and the right at issue was thus not clearly established. We therefore reverse the denial of summary judgment based on qualified immunity.

I.

In the early morning hours of October 15, 2015, Shelton violently assaulted a man at a strip club in Davenport, Iowa. Shelton and his two brothers repeatedly kicked the man in the head and left the victim in a coma.

Police obtained a warrant for Shelton's arrest the next day. That afternoon, police officers Walker and Proehl observed Shelton exit a business and enter a car. The business was located across the Mississippi River from Davenport in Rock Island, Illinois.

The officers approached the vehicle and ordered Shelton out of the car. Shelton refused. Proehl attempted to pull Shelton out and used force that included a punch to the face and a knee to the head. Walker observed a loaded magazine of bullets in the front seat. At that point, Proehl saw that Shelton was sitting on a handgun. The officers backed away and drew their weapons, but Shelton started his car and sped away.

Walker, Proehl, and several more officers from Davenport and Rock Island chased Shelton at high speed for several miles. Walker announced several times over the radio that Shelton was armed with a gun. Stevens, a Davenport officer, joined the pursuit. Having crossed the river back to Iowa, Shelton eventually crashed his car in a wooded area. He then fled on foot into the surrounding woods, and eventually emerged on the other side where a city street bounded the woods.

Police found Shelton walking on the street with his hands in the air, but he refused to comply with police commands to stop and get on the ground. The ensuing scene was captured on a video recording. Two officers, Colclasure and Lansing, tackled Shelton to the ground. Three others joined in attempting to restrain and handcuff Shelton. Shelton was held down by the officers, but he refused to surrender and kept his hands underneath him in a position described as "turtling." One officer felt a hard object in Shelton's front pocket. Approximately thirty seconds after the first officers tackled Shelton, officers Robinson and Stevens approached the scuffle. R. Doc. 26-3, Disc E, at 13:41-14:11.

During the scrum on the ground, Colclasure punched Shelton in the ribs to keep him from reaching his pocket. Lansing said that officers were able to gain control of one arm only, and he then used a chokehold that eventually caused Shelton to lose consciousness briefly. At almost the same moment when Lansing applied the chokehold, Robinson arrived and hit Shelton on the head with the butt of his radio. R. Doc. 69-2, at 69, pp. 45-46. No more than two seconds later, Stevens stomped on Shelton's ankle. R. Doc. 26-3, Disc E, at 14:11-14:13. The officers then gained control of Shelton's hands and placed them in handcuffs. The hard object in his pocket turned out to be a cell phone.

Shelton was hospitalized for several injuries, including a broken left ankle that required surgery to place several pins in his leg. Stevens contends that the video recording shows clearly that he stepped on Shelton's healthy right ankle, but the video is not conclusive on this point, so we assume for present purposes that Stevens's action caused the injury. *See Michael v. Trevena,* 899 F.3d 528, 532 (8th Cir. 2018). Stevens also asserts that before he applied force, "Shelton was attempting to get back to his feet by trying to regain his base by drawing his feet up to his body." But this too is a disputed fact that is not conclusively established by video evidence, so we do not consider it. *See Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (per curiam). Our review must be based on the facts assumed by the district court, *see Ellison v. Lesher*, 796

F.3d 910, 913 (8th Cir. 2015), unless they are blatantly contradicted by a video or other unassailable record material. *See Scott v. Harris*, 550 U.S. 372, 380-81 (2007).

Shelton sued officers Proehl, Colclasure, Lansing, Robinson, and Stevens, claiming they violated his right under the Fourth Amendment to be free from unreasonable seizure by using excessive force in arresting or attempting to arrest him. The district court ruled that all officers except Stevens were entitled to qualified immunity.

As to the other officers at the scene of the seizure, the court explained that "Shelton did not comply with instructions from officers to give them his hands, had a cell phone in his right pants pocket that could be mistaken for a gun, and made movements which could be construed as attempts to access something in his front pants pocket." The court decided that a reasonable officer in Colclasure's situation could have believed it reasonable to use several closed-fisted strikes to the ribs to subdue a non-compliant suspect. The court ruled that Lansing's use of "a brief chokehold to subdue a non-compliant, potentially armed suspect" did not violate a clearly established right. And the court concluded that "[a] reasonable officer in Robinson's situation would have believed using one strike with the butt end of a radio to try to subdue a non-compliant, potentially armed suspect was not a constitutional violation."

But the district court, taking the facts in the light most favorable to Shelton, denied Stevens's motion for summary judgment on the ground that "a reasonable officer in the situation would have known the force used violated Shelton's constitutional rights under the Fourth Amendment." The court explained that "[a]t the time Stevens approached, Shelton was being restrained by at least five other officers" who "appeared to have Shelton substantially under control." The court concluded that it was "unclear any legitimate restraint purpose" was served by Stevens's stomp on Shelton's ankle.

After further discovery, Stevens moved again for summary judgment. The court denied the second motion on the ground that factual disputes prevented a determination about whether Stevens's actions were reasonable under the circumstances. The court reiterated that Shelton was "substantially subdued by five other officers," and concluded that the evidence did not "clearly show the circumstances relevant to the reasonableness of Stevens's use of force, including whether Shelton posed an immediate threat to officers or whether he was actively resisting arrest at the time of Stevens's action." Stevens appeals the denial of qualified immunity.

## II.

Shelton asserts that Stevens violated his right under the Fourth Amendment to be free from an unreasonable seizure because Stevens used excessive force when assisting in the arrest. Assessing the reasonableness of a seizure "requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)).

"[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* Reasonableness must be judged from "the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* The inquiry is objective, so the officer's subjective motivations are not controlling.

The objective reasonableness of an officer's actions must be assessed with careful attention to particular circumstances of the case. These include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* The degree of a plaintiff's injury is also relevant "insofar as it

-5-

tends to show the amount and type of force used." *Chambers v. Pennycook,* 641 F.3d 898, 906 (8th Cir. 2011). We bear in mind that police are required to make "split-second judgments" regarding what force to use in "tense, uncertain, and rapidly evolving" circumstances. *Graham*, 490 U.S. at 397.

Relevant circumstances in this case include that police were attempting to arrest Shelton for his role in a brutal beating, and that Shelton fled from officers at high speed for several miles while armed with a handgun and ammunition. When officers finally reached Shelton after a foot chase, he was eventually pinned under five officers, but he refused to surrender his hands. Officers reasonably believed that Shelton's position posed a threat to officer safety, because at least one of his hands was unrestrained in an area of his body where weapons could be concealed. Shelton did not present evidence that officers had secured his hands before Stevens's disputed use of force.

Because the unresolved situation still posed a threat to officers, there was a legitimate interest in restraining Shelton further when Stevens approached. At the time Stevens joined the fray, there were five or six officers trying to restrain Shelton. Stevens says, among other things, that he intended "to distract what [Shelton] was doing from endangering those officers," because he could not see Shelton's hands. This was an objectively reasonable basis for the application of additional force. The district court acknowledged almost as much when it ruled that a reasonable officer could believe that Robinson reasonably struck Shelton in the head with a radio no more than two seconds before Stevens stomped on his ankle. While Robinson's use of force is not directly before us in this appeal, we conclude in analyzing Stevens's action that it was objectively reasonable for officers to apply some amount of supplemental force in order to gain control of Shelton's hands and to restrain him.

The district court's second order said the evidence was unclear about whether Shelton "posed an immediate threat to officers or whether he was actively resisting arrest at the time of Stevens's action." R. Doc. 101, at 5. But the district court did not

-6-

retreat from the undisputed fact that Shelton had refused to surrender his hands before Robinson and Stevens approached the scene, R. Doc. 83, at 19, and that Shelton was thus "substantially"—but not fully—subdued when Stevens acted. R. Doc. 101, at 1. If the district court's reference to ambiguity about an immediate threat or active resistance meant that Shelton might have surrendered his hands during the two seconds between Robinson's arrival and Stevens's act, the court did not say so, and a reasonable officer could not be expected to discern such a split-second change in any event. Whether Shelton's undisputed posture reasonably justified an application of additional force is a legal question that we answer in the affirmative.

The particular question here, then, is whether the amount and type of force that Stevens used was objectively reasonable under the circumstances taken in the light most favorable to Shelton. How much force was reasonable presents a fact-specific judgment call, and there may be a fine line between employing a brief chokehold that rendered Shelton unconscious, striking Shelton in the head with a radio, and stomping on Shelton's ankle.

Under all the circumstances, however, we conclude that Stevens's alleged use of force was unreasonable under the Fourth Amendment. A stomp on the ankle with sufficient force to break it was excessive when the legitimate objective was to facilitate restraint of Shelton's hands while he was pinned to the ground by several officers. Although the reasonableness requirement of the Fourth Amendment does not require an officer to pursue the least aggressive or most prudent course of conduct, *Cole v. Bone*, 993 F.3d 1328, 1334 (8th Cir. 1993), the availability of lesser measures is relevant to the inquiry. *Retz v. Seaton*, 741 F.3d 913, 918 (8th Cir. 2014). There were other means, short of the force employed, to distract Shelton from his efforts to avoid restraint and to assist with apprehension of the arrestee while still maintaining officer safety. The force used by other officers on the scene, for example, likely was sufficient to produce the desired outcome without causing serious injury to Shelton. Even allowing for the rapidly evolving situation, and eschewing the temptation to evaluate

police conduct with perfect hindsight, we conclude on balance that Stevens's stomp, under the assumed facts, constituted an unreasonable use of force.

Even so, to defeat Stevens's defense of qualified immunity, Shelton must demonstrate that his right to be free from this particular use of force was clearly established at the time of the incident. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Even where an officer's action is deemed unreasonable under the Fourth Amendment, he is entitled to qualified immunity if a reasonable officer could have believed, mistakenly, that the use of force was permissible—if he was "reasonably unreasonable." *Anderson v. Creighton*, 483 U.S. 635, 643 (1987). "Use of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (per curiam) (internal quotation marks omitted). "While there does not have to be a case directly on point, existing precedent must place the lawfulness of the particular action beyond debate." *City of Escondido v. Emmons*, 139 S. Ct. 500, 504 (2019) (per curiam) (internal quotation and brackets omitted).

We think Stevens's action falls within the zone described as the "sometimes hazy border between excessive and acceptable force." *Saucier v. Katz*, 533 U.S. 194, 206 (2001) (internal quotation omitted). The district court's treatment of three officers suggests the haziness: Robinson and Lansing were granted qualified immunity for a blow to Shelton's head and a brief chokehold, respectively, because they were trying to "subdue a non-compliant, potentially armed suspect." But the court reasoned that Stevens's stomp, no more than two seconds later, violated a clearly established right because "Shelton was being restrained by at least five other officers" who "appeared to have Shelton substantially under control."

As we see it, all three officers confronted a suspect who was being restrained by several other officers, and all three were trying to subdue a non-compliant, potentially armed suspect. Is it obvious that a chokehold with its potential for asphyxiation, or blunt force to the skull with the attendant risk of head injury, is more suitable to the situation than a hard step on the talus? As it turned out, given how the officers applied the tactics here, Shelton was able to resume breathing after the choke, did not suffer brain injury from the blow to the cranium, but assumedly sustained a fractured ankle from Stevens's act. Some use of force was reasonable, and constitutional distinctions among a chokehold, a radio-bang to the head, and an unreasonable ankle-stomp—all objectively designed to prompt Shelton to surrender his hands—are hazy enough to warrant qualified immunity for Stevens.

The circuit precedent identified by Shelton and the district court is insufficient to place the reasonableness of Stevens's action beyond debate. *Krout v. Goemmer*, 583 F.3d 557, 566 (8th Cir. 2009), and *Henderson v. Munn*, 439 F.3d 497, 502-03 (8th Cir. 2006), establish the unreasonableness of a gratuitous use of force against an arrestee who is handcuffed, not resisting, and fully subdued. *Karels v. Storz*, 906 F.3d 740 (8th Cir. 2018), held it unreasonable for an officer to body-slam a nonviolent, nonthreatening misdemeanant who pulled her arm away from the officer to extinguish a cigarette, where no reasonable officer would have viewed the act as noncompliance. *Id.* at 745-47. *Montoya v. City of Flandreau*, 669 F.3d 867 (8th Cir. 2012), involved a leg sweep that broke the leg of a misdemeanant who merely raised her hands above her head in frustration while standing ten to fifteen feet away from officers. *Id.* at 871. Shelton, by contrast, was an accused violent felon who was potentially armed and not fully subdued or handcuffed, and a reasonable officer could have believed that he posed a threat until he surrendered his hands.

Even though several officers were on top of Shelton, he continued to "turtle up" so that at least one hand was free and potentially available to access any weapon that might be concealed in his midsection. Our closest decision on point held that a prone

-9-

suspect's refusal to surrender his hands justified the use of a taser. *Carpenter v. Gage*, 686 F.3d 644, 649 (8th Cir. 2012). Shelton has identified no other decision that addresses how much additional force is reasonably used to subdue a suspect under these or similar circumstances. Nor is this the "rare obvious case" in which the unreasonableness of a seizure is clearly established without a prior decision on comparable facts. *See Emmons*, 139 S. Ct. at 504 (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018)). A number of the relevant factors supported the use of force, so reasonableness was a matter of degree, and qualified immunity protects officers from the specter of lawsuits and damages liability for mistaken judgments in gray areas.

\*       \*       \*

For these reasons, the order of the district court denying qualified immunity to Stevens is reversed.

_____