# United States Court of Appeals

## For the Eighth Circuit

_____

No. 17-1946

_____

Landon L. Michael

*Plaintiff - Appellant*

v.

Joshua Trevena; Ryan Chaffee, in their individual capacities as officers of the
Watford City Police Department

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of North Dakota - Bismarck

_____

Submitted: March 13, 2018
Filed: August, 7, 2018

_____

Before GRUENDER, BEAM, and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

Landon Michael filed suit against Watford City, North Dakota, police officers
Joshua Trevena and Ryan Chaffee, alleging unlawful arrest and excessive force after
the officers were called to help resolve a family dispute. The district court granted
the officers summary judgment based on qualified immunity. Michael appeals.

Michael was in possession of a set of keys to a truck his mother had rented. He refused to return them without speaking to his mother, but she refused to talk with him. The police were called. Officer Trevena arrived first, and officer Chaffee soon afterward. Both officers wore microphones that recorded much of what happened next. Both officers also drove police vehicles equipped with dashboard cameras. Trevena's vehicle was positioned such that the camera was facing away from the front yard where Michael was sitting. Chaffee's vehicle was positioned with its dash cam pointing at the yard, but its view was almost completely obscured by a large tree.

Michael was sitting in a chair on the lawn of his cousin's home, and his mother and sister (who was in the driver's seat) were sitting in a vehicle parked nearby. Michael went to speak to his mother but, as he approached, Michael's sister started the vehicle and began to drive away. Michael returned to the lawn chair, out of view of either officer's dash cam. He claimed that his sister had run over his foot on purpose. As recorded by the officers' microphones, the exchange went as follows:

| | |
|---|---|
| TREVENA: | You intentionally put your foot under the vehicle. |
| MICHAEL: | No, I . . . I did not intentionally do that. |
| TREVENA: | Yeah, ya did. |
| MICHAEL: | I did not in . . . you know I didn't; you are accusing me of nothin' just to provoke me and I did not do no such thing. |
| TREVENA: | Yeah, ya did. |
| MICHAEL: | I did no such thing. She just ran over my foot. |
| TREVENA: | You were standing that far away . . . . |
| MICHAEL: | She just ran over my foot, sir. She ran over my foot. You can be a witness against me in court. |
| TREVENA: | Okay, she ran over your foot? |
| MICHAEL: | You can be a witness against me in court. |
| TREVENA: | Okay, did she intentionally run over your foot? |
| MICHAEL: | Yes. |

TREVENA:        I am going to arrest you for providing a false statement to a peace officer right now.

Both officers then moved in to arrest Michael.

Trevena ordered Michael to stand up, but he remained seated. The officers say Michael tensed up his body and gripped the chair, which Michael denies. Michael says Trevena grabbed his right arm and throat, which Trevena denies. Everyone agrees that Chaffee took out his police baton and placed it between Michael's left arm and chest. Chaffee then used the baton as a lever to get Michael out of the lawn chair, and broke Michael's arm. Michael was transported to the hospital. Trevena and Chaffee filed charges against Michael for making a false report, citing the exchange reproduced above. The North Dakota authorities declined to prosecute.

Michael filed this 42 U.S.C. § 1983 case against Trevena and Chaffee for excessive force and unlawful arrest.[1] The district court granted both officers summary judgment on the basis of qualified immunity, and Michael appeals.

II.

We review grants of summary judgment de novo. Gilmore v. City of Minneapolis, 837 F.3d 827, 832 (8th Cir. 2016).

---

[1]Michael also contests the district court's denial of his Rule 59(e) motion to alter or amend the judgment to include a ruling on a claim against Trevena for unlawful investigatory detention. The district court concluded that Michael had failed to adequately plead unlawful investigatory detention as a separate claim, and had not timely moved to amend his complaint before moving for summary judgment. Reviewing for an abuse of discretion, see Webb v. Exxon Mobil Corp., 856 F.3d 1150, 1160 (8th Cir. 2017), we affirm that ruling.

-3-

"[O]fficers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" District of Columbia v. Wesby, 138 S. Ct. 577, 589 (2018) (quoting Reichle v. Howards, 566 U.S. 658, 664 (2012)). In this case, neither party disputes the clearly-established prong of the qualified immunity analysis. Thus, the only question for us to resolve is whether, viewing the record in the light most favorable to Michael, Trevena and Chaffee violated Michael's constitutional rights.

The Supreme Court has explained:

> The first step in assessing the constitutionality of [the officers'] actions is to determine the relevant facts. As this case was decided on summary judgment, there have not yet been factual findings by a judge or jury, and [Michael's] version of events (unsurprisingly) differs substantially from [the officers'] version. When things are in such a posture, courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the [summary judgment] motion. In qualified immunity cases, this usually means adopting . . . the plaintiff's version of the facts.

Scott v. Harris, 550 U.S. 372, 378 (2007) (cleaned up). But that does not mean we are bound to credit the plaintiff's version of events, come what may. Id. at 379–80. "At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Id. at 380. Therefore, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Id.

Applying those rules here, we conclude that neither party's version of events is "blatantly contradicted by the record" because the dash cam video of the incident

reveals very little. Owing to the tree and the way the dash cam frames the front yard, the following events are missing from the video: (1) Michael's sister running over his foot (intentionally or otherwise); (2) Michael sitting in the lawn chair once he returns to the front lawn; (3) the officers approaching Michael; (4) Michael's posture and physical reaction to the officers; (5) the officers' actions to remove Michael from the lawn chair; and (6) the breaking of Michael's arm. Although the officers' audio recordings make it fairly clear who said what during the events, the recordings are insufficient to conclusively resolve whether Trevena and Chaffee violated Michael's constitutional rights. The officers' argument that the dash cam footage is dispositive of the case is wholly unsupported by the record. Accordingly, we conclude that this is one of those "usual" qualified immunity cases in which viewing the facts in the light most favorable to the nonmovant "means adopting . . . the plaintiff's version of the facts." Id. at 378.

We turn now to Michael's two claims. On the excessive force claim, "[t]he test is whether the amount of force used was objectively reasonable under the particular circumstances." Small v. McCrystal, 708 F.3d 997, 1005 (8th Cir. 2013) (quoting Brown v. City of Golden Valley, 574 F.3d 491, 496 (8th Cir. 2009)). Objective reasonableness is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham v. Connor, 490 U.S. 386, 396 (1989). The assessment "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. Applying these factors, we have previously "denied police qualified immunity in an excessive-force case where . . . (1) the arrestee's 'alleged misconduct was neither violent nor serious,' (2) 'there was little evidence to indicate that the arrestee posed a physical threat to anyone,' and (3) 'there was a factual dispute as to whether the arrestee was "actively" resisting arrest.'" Atkinson v. City of Mountain View, 709 F.3d 1201, 1213 (8th Cir. 2013) (cleaned up) (quoting Gainor v. Rogers, 973 F.2d

-5-

1379, 1388 (8th Cir. 1992)). We have also held "that force is least justified against nonviolent misdemeanants who do not flee or actively resist arrest and pose little or no threat to the security of the officers or the public." Brown, 574 F.3d at 499.

Accepting Michael's version of events as true, Trevena and Chaffee's use of force was objectively unreasonable. The officers allegedly suspected Michael of making a false statement—a nonviolent misdemeanor. See N.D. Cent. Code § 12.1-11-03(1). Michael was neither fleeing nor actively resisting arrest and, sitting in a lawn chair, he posed no threat to the security of the officers or the public. Accordingly, none of the Graham factors cuts in favor of a forceful arrest being reasonable. See Graham, 490 U.S. at 396; Atkinson, 709 F.3d at 1213. Under Michael's version of the facts, he was a nonviolent misdemeanant who neither fled nor actively resisted arrest, and posed no threat to the officers or other members of the public. See Brown, 574 F.3d at 499. Under these circumstances, it is objectively unreasonable to make an arrest by grabbing the suspect by the throat (Trevena), or using a baton with sufficient force to break the suspect's arm (Chaffee). Accordingly, neither officer is entitled to qualified immunity on Michael's excessive force claim.

On the unlawful arrest claim, the district court granted the officers summary judgment based on its finding that "Michael's report of his sister intentionally running over his foot was clearly false." Neither the dash cam video nor audio recordings can sustain that conclusion. The recordings are at best inconclusive and, in finding otherwise, the district court resolved fact disputes in the officers' favor, which is impermissible at summary judgment in any civil case, including a § 1983 suit involving the doctrine of qualified immunity. Tolan v. Cotton, 134 S. Ct. 1861, 1866–68 (2014).

Like the district court, the dissent believes that the dash cam video clearly shows Michael intentionally put his foot under the tire of his sister's vehicle (a

minivan). We have watched the same video and we disagree.[2] The video shows Michael walking quickly to the passenger side of the van. Michael's sister begins to drive away. We do not see Michael taking any steps backwards; his feet move but he remains immediately beside the van. As the van turns toward Michael and away from the curb, Michael's right foot moves under the rolling van. The van's rear tire—presumably the tire Michael says ran over his foot—is not visible because the van blocks the dash cam's view as it turns into the street. Though a jury could reasonably conclude that Michael put his foot under his sister's van on purpose, it could also reasonably conclude that Michael's sister deliberately turned the van toward him, and succeeded in running over his foot. Thus, this remains one of those "usual" qualified immunity cases in which viewing the facts in the light most favorable to the nonmovant "means adopting . . . the plaintiff's version of the facts." Scott, 550 U.S. at 378. Here, that means assuming, for the purpose of summary judgment, that Michael's sister intentionally ran over his foot.

"A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause." Amrine v. Brooks, 522 F.3d 823, 832 (8th Cir. 2008). "Probable cause exists when the totality of the circumstances shows that a prudent person would believe that the arrestee has committed a crime." Id. Officers are entitled to qualified immunity even if they "reasonably but mistakenly conclude that probable cause is present." Anderson v. Creighton, 483 U.S. 635, 641 (1987). This standard provides "'ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" Hunter v. Bryant, 502 U.S. 224, 229 (1991) (quoting Malley v. Briggs, 475 U.S. 335, 341, 343 (1986)).[3]

---

[2]The fact that a panel of this court cannot unanimously agree on precisely what the video shows may further support our conclusion that there is a genuine dispute of material fact.

[3]This circuit often refers to this standard using the shorthand "arguable probable cause." See Smithson v. Aldrich, 235 F.3d 1058, 1062 (8th Cir. 2000).

The officers claim they believed that Michael violated N.D. Cent. Code § 12.1-11-03(1), which makes it a crime to "[g]ive[] false information or a false report to a law enforcement officer which that person knows to be false, *and* the information or report may interfere with an investigation or may materially mislead a law enforcement officer." (Emphasis added). Though the parties cite no North Dakota cases interpreting this provision, we think the plain language of the statute is clear enough for our purposes: the information or report in question must be false, and of a nature that it may interfere with an investigation or materially mislead a law enforcement officer.

Viewing the facts in the light most favorable to Michael, it was objectively unreasonable to believe there was probable cause to arrest him for violating N.D. Cent. Code § 12.1-11-03(1). The officers arrested Michael for stating that his sister ran over his foot on purpose. Putting aside that Michael's accusation seems to us a matter of opinion (that, by definition, cannot be true or false), there was no basis to believe the accusation "may interfere with an investigation or may materially mislead a law enforcement officer."[4] Michael's exchange with Trevena makes clear that Trevena first decided Michael was lying, and then asked a question to induce Michael to repeat the accusation: "Okay, she ran over your foot?" When Michael's response evaded the question ("You can be a witness against me in court"), Trevena repeated his query: "Okay, did she intentionally run over your foot?" When Michael said "yes," Trevena and Chaffee arrested him. Where an officer has already concluded

_____

[4]The dissent asserts that the statute's ambiguity makes the officers' belief they had probable to arrest Michael reasonable because Michael's statements "may have led officers to investigate or even arrest his sister." But probable cause is evaluated under the totality of the circumstances *in a particular case*, based on what the record shows the officers knew and did. See Anderson, 483 U.S. at 641 (noting that the inquiry focuses on "the information that the [arresting] officers possessed"). To suggest that Michael's statements may have interfered with an investigation or misled an officer is to ignore what actually happened in this case.

that a suspect's statement is a lie, it is unreasonable to think that, by repeating the statement, the suspect may interfere with an investigation into whether the statement is, in fact, a lie. Equally unreasonable is the notion that repeating a statement, which the officer has already decided is false, might materially mislead a law enforcement officer into believing the statement is true. Thus, the officers' belief, mistaken or otherwise, that they had probable cause to arrest Michael for violating N.D. Cent. Code § 12.1-11-03(1) was unreasonable. Accordingly, neither Trevena nor Chaffee is entitled to qualified immunity.

## III.

We reverse the district court's grant of summary judgment to the officers, and remand for further proceedings consistent with this opinion.

GRUENDER, Circuit Judge, concurring in part and dissenting in part.

I agree that the district court erred in granting qualified immunity on Michael's excessive-force claims. As the court explains, because a tree partially obscures the only video of the arrest, there remain genuine questions of material fact concerning the extent to which Michael resisted arrest and the degree of force the officers employed. *See ante* at 5-6. Thus, I join that portion of the court's opinion. But, for two reasons, I respectfully dissent from the reversal of summary judgment as to Michael's unlawful-arrest claims.

First, the court misconstrues the record in "assuming, for the purpose of summary judgment, that Michael's sister intentionally ran over his foot." *Ante* at 6. While we generally must view the facts and draw all reasonable inferences in a light most favorable to the nonmoving party, the Supreme Court has made clear that we cannot accept allegations that are contradicted by reliable video evidence. *See Scott*

*v. Harris*, 550 U.S. 372, 380-81 (2007). Having reviewed the video here, I simply disagree that "[t]he recordings are at best inconclusive" as to whether Michael's sister intentionally ran over his foot. *Ante* at 6. Officer Chaffee's dash-camera video clearly shows that, as Michael's sister begins to drive off, he takes three backward steps away from the van before suddenly extending his right foot under the vehicle's rear, passenger-side tire. This video disproves Michael's claim that his sister intentionally ran over his foot. Indeed, Michael moved into the path of the vehicle so quickly that it would have been impossible for her to deliberately speed up or fail to stop, even if she could have seen his foot under the rear tire of the forward-moving vehicle. Thus, I do not accept the court's characterization of Michael's report to officers as "a matter of opinion (that, by definition, cannot be true or false)." *Ante* at 8. The video conclusively demonstrates that Michael deliberately put his foot under the vehicle, that his sister could not have intended to run it over, and that he made a false report to officers on both scores.

Second, and more problematically, the court misapplies the arguable probable cause standard in light of relevant statutory ambiguity. *See Walker v. City of Pine Bluff*, 414 F.3d 989, 992 (8th Cir. 2005) ("Because the qualified immunity privilege extends to a police officer who is wrong, so long as he is reasonable, the governing standard for a Fourth Amendment unlawful arrest claim is not probable cause in fact but arguable probable cause . . . that is, whether the officer should have known that the arrest violated plaintiff's clearly established right." (internal quotation marks omitted)). North Dakota's false-report statute makes it a crime to "[g]ive[] false information or a false report to a law enforcement officer which that person knows to be false, and the information or report *may* interfere with an investigation or *may* materially mislead a law enforcement officer." N.D. Cent. Code § 12.1-11-03(1) (emphasis added). As this case demonstrates, the final clause of this provision allows for several plausible interpretations: (1) that the false information or report must, *in fact*, interfere or mislead—as Michael suggests; (2) that the false information or

-10-

report must, *under the circumstances*, be *capable of* interfering or misleading, in light of the officer's subjective knowledge as to the validity of the information or report—the standard adopted by the court; or (3) that the false information or report is *of the type* that *may* interfere or mislead given its relation to an officer's law enforcement duties—as the officers contend.

The officers' interpretation strikes me as the most natural reading of statute, as the alternatives each require a deviation from the text. *See Johnson v. Dept. of Transp.*, 683 N.W.2d 886, 889 (N.D. 2004) (explaining that North Dakota statutes are to be interpreted by looking at the "plain language of the statute and giv[ing] every word of the statute its ordinary meaning"). For example, the final clause of the provision refers generally to "a law enforcement officer," not specifically to *the* officer who received the false report, which suggests a more objective standard than that adopted by the court. Nor is there any language in the provision indicating that the false report must actually interfere or mislead. Nevertheless, resolving this statutory ambiguity is not our task today. Instead, we must determine whether a reasonable officer could conclude that Michael's false report—that he did not deliberately put his foot under the vehicle and that his sister intentionally ran over his foot—was sufficient to constitute a violation of the statute.

Given that there is no North Dakota caselaw clarifying the ambiguous "may" provision and that the officers' interpretation is at the very least reasonable, their arrest of Michael did not violate clearly established law. *See Lawyer v. City of Council Bluffs*, 361 F.3d 1099, 1108 (8th Cir. 2004) (emphasizing that "[p]olice officers are not expected to parse code language as though they were participating in a law school seminar" and concluding that a challenged arrest "did not violate clearly established law" where a reasonable officer could believe that the plaintiff-arrestee's conduct violated an ambiguous provision, even if a state court later concluded that it did not); *see also Gorra v. Hanson*, 880 F.2d 95, 98 (8th Cir. 1989) ("Because the

law had not been construed at the time of the arrest, and because the troopers' interpretation was not inconsistent with common understanding, we cannot say that [their] interpretation of the statute was unreasonable."). Under the officers' reasonable reading of statute, both of Michael's statements would qualify as a false report because they may have led officers to investigate or even arrest his sister. Therefore, the officers had at least arguable probable cause to arrest Michael.

Accordingly, I concur in the court's reversal of summary judgment as to Michael's excessive-force claims but dissent from its reversal of summary judgment as to his wrongful-arrest claims.

_____