# United States Court of Appeals
## For the Eighth Circuit
_____

No. 24-2763
_____

Ronald Edward Young

*Plaintiff - Appellant*

v.

Eric Keyes, acting in his individual capacity as a Williston police officer; Nick
Rintamaki, acting in his individual capacity as a Williston police officer

*Defendants - Appellees*
_____

Appeal from United States District Court
for the District of North Dakota - Western
_____

Submitted: October 22, 2025
Filed: May 19, 2026
_____

Before SMITH, KELLY, and GRASZ, Circuit Judges.
_____

SMITH, Circuit Judge.

Williston Police Officer Eric Keyes saw Ronald Young make an illegal turn
and pulled him over. Officer Keyes questioned Young and had him exit his vehicle.
After Officer Keyes administered a series of field-sobriety tests, Young and Officer
Keyes began arguing. Eventually, Officer Keyes, with the assistance of Officer Nick
Rintamaki, took Young to the ground and handcuffed him. Young was injured in the

struggle. He subsequently sued Officers Keyes and Rintamaki for excessive force. The district court granted the officers' motion to dismiss on the grounds of qualified immunity. Young now appeals. We reverse and remand.

## I. *Background*

At approximately 10:00 p.m. on December 31, 2019, New Year's Eve, Officer Keyes witnessed a vehicle making an illegal left turn and initiated a traffic stop. During his conversation[1] with the driver, Young, Officer Keyes "observed indicia of alcohol intoxication" and conducted field-sobriety tests. R. Doc. 1, at ¶ 10. The officers conducted two tests. However, during the second, Young ceased complying with Officer Keyes's directions. After Officers Keyes and Rintamaki completed the two tests, Officer Keyes requested another screening test using an alcohol sensor. Young declined to answer whether he would agree to the test and instead continued asking questions. Officer Keyes then told Young, "I am done arguing with you." R. Doc. 17, at 3 (quoting R. Doc. 10-2, at 16:27). Young responded, "no," while stepping toward Officer Keyes. *Id.* (quoting R. Doc. 10-2, at 16:27).

Young's complaint describes the next series of events as follows:

12) Without warning, Keyes forcefully grabbed Young's arm.

13) After Keyes grabbed Young's arm, he then commanded Young to put his hands behind his back.

14) Rintamaki grabbed Young from the other side.

15) Both officers threw Young to the ground. Because the officers held Young's arms, Young was unable to protect himself from injury as he was thrown to the ground.

16) Young repeatedly asked officers what they were doing to him.

---

[1]The district court relied on dash-camera and body-camera footage, finding that they were "embraced by the pleadings." R. Doc. 17, at 2 (citing *Ching v. City of Minneapolis*, 73 F.4th 617, 621 (8th Cir. 2023)). The parties do not object to the use of the videos or their authenticity.

17) Young tried to prevent injury to himself during the encounter, but officers controlled him and prevented him from doing so.

18) The officers put their weight on Young's back once he was on the ground. Officers continued to control and put Young's arms into a painful position.

R. Doc. 1, at ¶¶ 12–18. The video footage does not contradict Young's allegations. The dash-camera footage is unclear as to whether Young attempted to pull his arms away after the two officers grabbed him prior to the three of them ending up on the ground. The body-camera footage recorded the officers telling Young to "stop resisting." R. Doc. 10-2, at 16:38. In addition, they directed him to put his hands behind his back.

Young alleges that Officers Keyes and Rintamaki used excessive force in violation of his Fourth Amendment rights. Young's complaint alleges that the force used by the officers broke his glasses, caused lacerations to his face and chin, and led to mental trauma and emotional harm. The officers moved to dismiss the complaint on grounds of qualified immunity. The district court granted the officers' motion. The district court held that the officers' use of force was de minimis[2] and, alternatively, that the force was objectively reasonable. Young now appeals.

## II. *Discussion*

We review the grant of a motion to dismiss de novo. *Waters v. Madson*, 921 F.3d 725, 734 (8th Cir. 2019). In reviewing a motion to dismiss, we may consider matters "embraced by the complaint," such as video evidence, where no party challenges the contents' authenticity. *Zean v. Fairview Health Servs.*, 858 F.3d 520,

---

[2]At oral argument, the government conceded that it did not "know that the force here actually was de minimis when a suspect is grabbed and then taken to the ground." Oral Arg. at 12:07. The government further stated "Assuming the facts in the light most favorable to the plaintiff . . . I don't think that would be de minimis force . . . ." *Id.* at 12:15. We agree with the parties and find that the district court erred in finding the force de minimis.

526 (8th Cir. 2017) (quoting *Enervations, Inc. v. Minn. Min. & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004)). We "accept[] as true all factual allegations in the light most favorable to the nonmoving party" unless "they are blatantly contradicted by video evidence." *Waters*, 921 F.3d at 734 (citation modified). To hold that the video evidence "blatantly contradict[s]" the alleged facts, it must conclusively disprove plaintiff's account of the events. *Edwards v. Byrd*, 750 F.3d 728, 733 (8th Cir. 2014) (holding that the video evidence did not blatantly contradict plaintiff's account of the events where it did not conclusively disprove the plaintiff's account).

Qualified immunity protects government officials from liability unless their actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Kohorst v. Smith*, 968 F.3d 871, 876 (8th Cir. 2020) (quoting *McGuire v. Cooper*, 952 F.3d 918, 922 (8th Cir. 2020)). We consider a "two-step inquiry: (1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009). A "clearly established" right "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Ehlers v. City of Rapid City*, 846 F.3d 1002, 1008 (8th Cir. 2017) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "Existing law need not be directly on point to clearly establish a right, but it must put the question beyond debate." *Kohorst*, 968 F.3d at 876.

"When evaluating a Fourth Amendment excessive force claim under § 1983, we consider 'whether the amount of force used was objectively reasonable under the particular circumstances.'" *Id.* (quoting *Michael v. Trevena*, 899 F.3d 528, 532 (8th Cir. 2018)). "We evaluate the reasonableness of the force used from the perspective of a reasonable officer on the scene," without the benefit of hindsight. *Id.* "The reasonableness inquiry, however, is an objective one: the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them." *Brown*, 574 F.3d at 496 (citation modified). This evaluation entails carefully considering the particular facts and circumstances, including: "[1]

the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Michael*, 899 F.3d at 532 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

First, we consider the severity of the crime at issue—driving while intoxicated. "We have previously cognized the severity of the suspected crime at issue—driving while intoxicated—and the immediate threat that impaired drivers pose to the safety of officers and others." *Schoettle v. Jefferson Cnty.*, 788 F.3d 855, 860 (8th Cir. 2015). But this severity is particularly threatening when the arrestee is "in command of a running vehicle." *Id.* (quoting *Janis v. Biesheuvel*, 428 F.3d 795, 800 (8th Cir. 2005)). At the time of the relevant interaction, Young was no longer in command of a running vehicle. Additionally, driving under the influence is a misdemeanor in North Dakota. N.D. Cent. Code Ann. § 39-08-01.

Next, we turn to whether Young posed an "immediate threat" to the officers' safety. The undisputed facts do not show that Young posed an immediate threat to the officers. As the conversation progressed, the environment became more "tense [and] uncertain," yet it remained nonthreatening. *See Graham*, 490 U.S. at 397. But being argumentative does not alone permit the use of force. *See, e.g.*, *Shannon v. Koehler*, 616 F.3d 855, 865 (8th Cir. 2010) ("Although [the suspect] greeted [the officer] in a disrespectful, even churlish manner, that alone did not make [the officer's] use of force acceptable under extant law."); *Bauer v. Norris*, 713 F.2d 408, 412 (8th Cir. 1983) ("The use of any force by officers simply because a suspect is argumentative, contentious, or vituperative is not to be condoned." (citation modified)).

The complaint's fact allegations, when construed in favor of Young, are inconclusive as to whether Young posed an immediate threat to the safety of the officers. The video evidence also fails to conclusively demonstrate that Young posed a threat. *See, e.g.*, *Raines v. Counseling Assocs., Inc.*, 883 F.3d 1071, 1075 (8th Cir. 2018), *as corrected* (Mar. 6, 2018) (finding that the video evidence did not

-5-

conclusively support the officers' argument and foreclose the arrestee's argument where the court found the evidence inconclusive on the matter). The only potential threat that Young himself posed arose when he responded to Officer Keyes by saying "no" and stepping towards him. Young's step and single word do not establish an imminent threat.

The officers argue that the circumstances of the stop and Young's general behavior further contributed to the threat that Young posed. We disagree. The stop's occurrence late on New Year's Eve on the side of a busy highway does not establish that the "suspect pose[d] an immediate threat to the safety of the officers." *Michael*, 899 F.3d at 532. Further, the video does not conclusively support the officers' arguments that Young moved "around on the side of the roadway in an erratic manner" and "reached into his coat," Appellee's Br. at 20, nor do such actions rise to the level of posing an immediate threat in a winter environment in North Dakota.

Finally, we look to the third factor—whether Young actively resisted arrest or attempted to evade arrest by flight. Consistently, we have held that a resisting arrestee may require more force. *See, e.g.*, *Wertish v. Krueger*, 433 F.3d 1062, 1066–67 (8th Cir. 2006) ("When a suspect is passively resistant, somewhat more force may reasonably be required."); *Carpenter v. Gage*, 686 F.3d 644, 650 (8th Cir. 2012) (finding the use of force reasonable where arrestee resisted and officers had to respond "with an amount of force that was reasonable to effect the arrest").

At this stage in the proceedings, the pleadings do not conclusively support the conclusion that Young resisted arrest. Looking at the allegations in the complaint, Young does not allege or imply that he resisted at all. Turning next to the video evidence, it does not blatantly contradict Young's allegations, nor does it conclusively support the officers' argument that Young resisted. First, the video does not show Young resisting the officers prior to Officer Keyes grabbing Young and then saying to "put your hands behind your back" after he already had hold of Young's hands. R. Doc. 10-2, at 16:30. Second, while the dash-camera footage indicates that Young potentially attempted to pull his arm away, it is not conclusive

-6-

that this constituted resistance. Third, the officer's yelling of "stop resisting" may imply that Young could have been resisting, but the video fails to provide a clear view of Young's actions. *Id.* at 16:38. When evaluating a motion to dismiss, we take as true the facts alleged in the complaint where the facts are not blatantly contradicted by video evidence. *See Waters*, 921 F.3d at 734. We hold that the video evidence is inconclusive as to whether Young resisted arrest and does not blatantly contradict Young's allegations within his complaint.

Young had a clearly established right to be free from excessive force as a misdemeanant. Here, there is no conclusive evidence that Young posed a threat to officers or resisted arrest to contradict the complaint allegations. We have long held that "[f]orce is least justified against nonviolent misdemeanants who do not flee or actively resist arrest and pose little or no threat to the security of the officers or the public." *Brown v. City of Golden Valley*, 574 F.3d 491, 499 (8th Cir. 2009); *see also Montoya v. City of Flandreau*, 669 F.3d 867, 873 (8th Cir. 2012) (holding it was unlawful to "throw to the ground a nonviolent, suspected misdemeanant who was not threatening anyone, was not actively resisting arrest, and was not attempting to flee"). While this analysis may be different had the officers given a command that Young failed to comply with prior to initiating force, those are not the facts here. *See, e.g.*, *Kelsay v. Ernst*, 933 F.3d 975, 980 (8th Cir. 2019) (holding the officer was protected by qualified immunity when executing a takedown after the officer had given a command and the arrestee did not comply).

Taking Young's allegations as true, except where conclusively contradicted by video evidence, we conclude that Officers Keyes and Rintamaki cannot show that they did not violate Young's clearly established rights at this stage of the proceedings.

### III. *Conclusion*

For the forgoing reasons, we reverse the district court's dismissal and remand for further proceedings.

Grasz, Circuit Judge, concurring in part and dissenting in part.

This appeal presents two issues — whether we may consider the body and dash camera footage Officers Keyes and Rintamaki filed along with their motion to dismiss and, if so, whether the footage blatantly contradicts the allegations in Young's Complaint. I join the majority's opinion on the first issue and write separately to explain why in more detail. But I am convinced the footage blatantly contradicts Young's allegations and shows that Keyes's and Rintamaki's use of force was objectively reasonable, so I dissent from the majority's analysis of the second issue and would affirm the district court's dismissal of this case with prejudice.

Taking the two issues in turn, this case is before us on Young's appeal from the district court's order granting Keyes and Rintamaki's motion to dismiss, which they filed under Federal Rule of Civil Procedure 12(b)(6). A defendant is entitled to have the complaint against him dismissed pursuant to Rule 12(b)(6) if it "fail[s] to state a claim upon which relief can be granted." When we evaluate a 12(b)(6) motion, the plaintiff gets certain procedural breaks. For instance, we ordinarily consider only "the facts alleged in the complaint." *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). And we assume those facts "are true" and draw "all reasonable inferences" from them in the plaintiff's favor. *Fla. State Bd. of Admin. v. Green Tree Fin. Corp.*, 270 F.3d 645, 660 (8th Cir. 2001). This makes sense. The plaintiff has "not had a full opportunity to conduct discovery" or to "uncover facts that support his or her claim" at the pleading stage. *Ashley v. U.S. Dep't of Interior*, 408 F.3d 997, 1000 (8th Cir. 2005).

Over the years, we have recognized several deviations from this framework. For example, courts may now consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint" when ruling on a 12(b)(6) motion. *Miller v. Redwood Toxicology Lab'y, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012) (quoting 5B Wright & Miller, *Federal Practice &*

*Procedure* § 1357 (3d ed. 2004)). This is because, as we have explained, these materials, and others, are "necessarily embraced by the pleadings." *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (quoting *Piper Jaffray Cos. v. Nat'l Union Fire Ins. Co.*, 967 F. Supp. 1148, 1152 (D. Minn. 1997)).

More recently, we broadly stated that "[v]ideos of an incident are necessarily embraced by the pleadings." *Ching ex rel. Jordan v. City of Minneapolis*, 73 F.4th 617, 620–21 (8th Cir. 2023) (citing *LeMay v. Mays*, 18 F.4th 283, 289 (8th Cir. 2021) (Grasz, J.)). But to support this proposition, *Ching* cited only *LeMay*, a case I authored. And *LeMay* does not say that courts can always consider video evidence when ruling on a 12(b)(6) motion. Rather, it concluded that the officer was not entitled to qualified immunity even considering the videos, since they did not definitively show he had acted reasonably. 18 F.4th at 289–90.

In our precedent predating *Ching*, we repeatedly held that evidence is only embraced by a pleading when no party questions its authenticity. *See, e.g.*, *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012) ("Documents necessarily embraced by the pleadings include 'documents whose contents are alleged in a complaint *and whose authenticity no party questions*, but which are not physically attached to the pleading.'" (emphasis added) (quoting *Kushner v. Beverly Enters.*, 317 F.3d 820, 831 (8th Cir. 2003))). So I agree with the majority, *ante*, at 3, video evidence of an incident, just like other evidence, is only "necessarily embraced by the pleading" when neither party questions its authenticity.[3] *See Ashanti*, 666 F.3d at 1151.

I note that after *Ching*, several district courts dispensed with our earlier precedent in favor of universally considering video evidence at the pleading stage. They were wrong to do so. *Ching* did not — and could not — overrule our prior

---

[3]A petition for certiorari asking the Supreme Court to resolve the circuit split regarding "[w]hether a district court may, or must, consider objective video evidence at the motion-to-dismiss stage" is currently pending. Petition for Writ of Certiorari at i, *Zook v. Fuqua ex rel. Roybal*, No. 25-1108 (U.S. Mar. 19, 2026).

precedent. *See Smith v. United States*, 63 F.4th 677, 678 (8th Cir. 2023) ("Only the en banc court (or the Supreme Court) can overrule a prior panel's controlling decision."). And practically, adhering to our earlier rule is more important today than ever, given the increasing prevalence of artificial intelligence. Seeing no longer means believing.

Turning to the second issue, I agree with the majority that Young's Complaint, standing alone, states an excessive force claim. *Ante*, at 5–6. So Keyes and Rintamaki are only entitled to qualified immunity if the body and dash camera footage "blatantly contradicts" Young's allegations and shows that their use of force was objectively reasonable. *Boude v. City of Raymore*, 855 F.3d 930, 933 (8th Cir. 2017) (cleaned up); *see also Ehlers v. City of Rapid City*, 846 F.3d 1002, 1011 (8th Cir. 2017) ("To determine whether a particular use of force was excessive, the court considers whether it was objectively reasonable under the circumstances, relying on the perspective of a reasonable officer present at the scene rather than the 20/20 vision of hindsight." (cleaned up)). In my view, the videos do just that.

For instance, in his Complaint, Young alleges that Keyes pulled him over after seeing him make an illegal turn; that Keyes and Rintamaki then administered a series of field sobriety tests after observing "indicia of alcohol intoxication"; and that "[a]fter the tests were completed," Keyes and Rintamaki "grabbed" his arms and threw him to the ground "[w]ithout warning."

The videos, on the other hand, show that while Young was generally calm, cool, and cooperative while Keyes administered an eye test and the walk-and-turn test, he became exasperated around fifteen minutes into the stop, as Keyes tried to explain a "screening test" that he had planned to conduct next. Young began arguing with Keyes, telling the officers that they needed to "chill the f**k out" and demanding they explain whether he had passed the prior tests. Keyes eventually said, "Ronald, I'm done arguing with you" and moved to grab Young's arm. Young shouted "no," abruptly stepped toward Keyes, and raised his right arm toward Keyes. Keyes then seized Young's right arm and told him to "put [his] hands behind his

back." At the same time, Rintamaki tried to seize Young's left arm. But Young struggled. As a result, the officers employed a takedown and were eventually able to handcuff Young.

I recognize that granting qualified immunity at the pleading stage based on video evidence is a high hurdle, since the video must conclusively disprove the plaintiff's allegations. *See Edwards v. Byrd*, 750 F.3d 728, 733 (8th Cir. 2014). In my view, however, the footage in this case meets this test because it blatantly contradicts Young's allegations that Keyes and Rintamaki seized him and threw him to the ground without reason. The footage shows that Young became aggravated and belligerent as the officers prolonged the traffic stop and that when they ultimately told him to put his hands behind his back and tried to seize his arms to arrest him, he resisted by pulling his arms away. As I see it, when Young refused to give the officers his arms, they were "entitled to use the force necessary to effect an arrest," since he "at least appear[ed] to be resisting." *Kohorst v. Smith*, 968 F.3d 871, 876 (8th Cir. 2020) (quoting *Ehlers*, 846 F.3d at 1011). And the takedown they used was objectively reasonable under the circumstances. *See Ehlers*, 846 F.3d at 1011.

I acknowledge that the officers bear some responsibility for this unfortunate situation, since they subjected Young to successive and prolonged sobriety tests, even as he became increasingly (and obviously) agitated. They had ample reason to arrest Young much earlier in the stop, while he calmy cooperated. But this does not change the result. So I would affirm the district court's order dismissing this case with prejudice because Keyes and Rintamaki are entitled to qualified immunity.[4]

_____

_____

[4]Lastly, I agree with the majority that takedowns are more than de minimis force. *Ante*, at 3 n.2; *see also Mitchell v. Kirchmeier*, 28 F.4th 888, 898 (8th Cir. 2022) (recognizing takedowns are more than de minimis force) (first citing *Montoya v. City of Flandreau*, 669 F.3d 867, 870, 872–73 (8th Cir. 2012); and then citing *Shannon v. Koehler*, 616 F.3d 855, 858, 863–64 (8th Cir. 2010)).